UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OCP S.A.,  )<br>  )<br>             Plaintiff,  )<br>  )<br>        v.  )<br>  )<br>UNITED STATES,  )<br>  )<br>             Defendant.  )<br>  ) | Case No. 23-261 |

# COMPLAINT

Plaintiff OCP S.A. ("OCP"), by and through its attorneys, alleges and states as follows:

1. OCP contests aspects of the U.S. Department of Commerce's ("Commerce") Final Results in the first administrative review of the countervailing duty order on phosphate fertilizers from the Kingdom of Morocco ("Morocco"), covering the period from November 30, 2020 – December 31, 2021. *See Phosphate Fertilizers From the Kingdom of Morocco: Final Results of Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 76,726 (Dep't of Commerce Nov. 7, 2023) ("*Final Results*") and accompanying Issues and Decision Memorandum ("IDM").

## JURISDICTION

2. OCP brings this challenge to Commerce's *Final Results* pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c).

## STANDING

3. OCP is a Moroccan producer and exporter of phosphate fertilizers. OCP is an interested party under 19 U.S.C. § 1677(9)(A).

4. OCP was the sole foreign exporter/producer selected by Commerce for examination. OCP participated in the underlying administrative review giving rise to this action and is a "party to the proceeding in connection with which the matter arose." 28 U.S.C. § 2631(c); *see* 19 U.S.C. § 1516a(a)(2)(A).

## TIMELINESS OF THIS ACTION

5. Commerce published the *Final Results* in the *Federal Register* on November 7, 2023. *Final Results*, 88 Fed. Reg. at 76,726. OCP commenced this action on December 7, 2023 by filing its Summons, within the time period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(I).

6. OCP timely files this Complaint within 30 days of the filing of its Summons, as required by 19 U.S.C. § 1516a(a)(2)(A) and U.S. Court of International Trade Rule 3(a)(2).

## STATEMENT OF FACTS

7. On June 9, 2022, Commerce initiated the first administrative review ("AR 1") of the countervailing duty order on phosphate fertilizers from Morocco, with a period of review from November 30, 2020 through December 31, 2021. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 35,165 (Dep't of Commerce June 9, 2022).

8. On June 22, 2022, Commerce selected OCP as the sole producer/exporter under examination in AR 1. The other reporting entities in this administrative review included the following OCP affiliates: Jorf Fertilizer Company I, Jorf Fertilizer Company II, Jorf Fertilizer Company III, Jorf Fertilizer Company IV, and Jorf Fertilizer Company V.

9. On June 28, 2022, Commerce issued the initial Countervailing Duty Questionnaire to OCP and the Government of Morocco ("GOM"). OCP and the GOM timely submitted responses to the initial questionnaire between July and September 2022. From August 2022 to August 2023, OCP and the GOM timely filed factual submissions, including responses

to Commerce's three supplemental questionnaires in August 2022, December 2022, and April 2023, respectively.

10. Commerce's initial questionnaire sought information from OCP and the GOM regarding other potential subsidy programs without any evidence that these other potential programs appeared to be a countervailable subsidy. Specifically, Commerce asked OCP:

> Has the government, or entities owned in whole or in part by the government, directly or indirectly, provided to the producers or exporters of the subject merchandise under review any other non-recurring benefits over the 10-year AUL (i.e., the POR and preceding nine years), or recurring benefits during the POR? . . . For each such program, please answer all questions in the Standard Questions Appendix and any other applicable appendices to this section separately for each program. If the government has not provided any other benefits, then please so state.

(hereinafter the "Other Assistance Question"). Based on the information OCP provided in response to this unlawful Other Assistance Question, Mosaic filed two new subsidy allegations ("NSA") in September 2022, with respect to the Provision of Port Services for Less than Adequate Remuneration ("LTAR") and the GOM's Purchases of Electricity for More than Adequate Remuneration ("MTAR"). In February 2023, Commerce initiated an investigation into these alleged new subsidy programs. *See* Memorandum from Robert Palmer to Irene Darzenta Tzafolias, *Countervailing Duty Administrative Review of Phosphate Fertilizers from Morocco: New Subsidy Allegations* (Feb. 16, 2023).

11. In March 2023, Commerce issued OCP and the GOM NSA questionnaires. Under the threat of adverse facts available, OCP and the GOM submitted responses to these unlawful NSA questionnaires in April 2023 and to Commerce's subsequent unlawful supplemental NSA questionnaires in July and August 2023.

12. On April 10, 2023, OCP timely submitted comments for Commerce's consideration prior to the Preliminary Results.

3

13. On May 5, 2023, Commerce published notice of its Preliminary Results in the Federal Register. *See Phosphate Fertilizers From the Kingdom of Morocco: Preliminary Results of the Countervailing Duty Administrative Review, 2020-2021*, 88 Fed. Reg. 29,089 (Dep't of Commerce May 5, 2023) ("*Preliminary Results*"), and accompanying Preliminary Issues & Decision Memorandum ("PDM").

14. Among other matters, Commerce preliminarily determined, consistent with its unlawful determination in the Investigation, that the GOM's Reductions in Tax Fines and Penalties "program" was *de facto* specific. PDM at 12-13. Commerce's *de facto* specificity finding lacked any discussion of, or citation to, record evidence or any analysis of the economic diversification of the Moroccan economy, as required under 19 U.S.C. § 1677(5A). Compounding its error, Commerce then preliminarily calculated a CVD rate for certain alleged programs that Commerce investigated only because of information OCP was required to submit in response to the Other Assistance Question. In the *Preliminary Results*, Commerce did not include a determination with respect to the two new subsidy allegations.

15. From September 6 to 8, 2023, Commerce conducted on-site verification of OCP in Casablanca and Khouribga, Morocco. On September 11 and 12, 2023, Commerce conducted verification of the GOM in Casablanca, Morocco.

16. Consistent with Commerce's instructions in the Verification Agenda, OCP presented to Commerce at the commencement of verification its Minor Corrections, including a small payroll tax refund that OCP received from the Moroccan Office de Formation Professionnelle et de la Promotion du Travail ("OFPPT") responsive to the Other Assistance Question. It was only in the course of preparing for verification that OCP identified this small payroll tax refund, for the first time, because, unlike other tax programs, the OFPPT payroll tax

refund was not provided through OCP's tax returns. The refund was instead provided through a separate application process and booked in a different account from the one normally used to book tax refunds. *See* Memorandum from Jaron Moore to Irene Darzenta Tzafolias and Robert Palmer, Verification of the Questionnaire Responses of OCP S.A. at 2 (Oct. 6, 2023) ("Verification Report"). As part of its Minor Corrections, OCP disclosed the precise amount of the refund received during the period of review. *See id*. Upon identifying the unreported tax refund, OCP cooperated to the maximum extent possible by promptly and timely disclosing the amount and circumstances of the previously unreported tax refund to Commerce as a minor correction at the commencement of verification.

17. On October 6, 2023, Commerce issued its Verification Report providing a factual report of the methods, procedures, and results collected during Commerce's verification. Commerce consistently noted in the Verification Report that it did not note any discrepancies between the information submitted by OCP and OCP's book and records examined at verification. Nonetheless, Commerce declined to accept the OFPPT tax refund as a minor correction. Verification Report at 2.

18. On October 11, 2023, Commerce issued a post-preliminary determination finding that neither of the two new subsidy allegations, the Provision of Port Services and Infrastructure for LTAR and the Purchase of Electricity for MTAR, conferred a benefit to OCP. *See* Memorandum from James Maeder to Lisa Wang, *Post-Preliminary Analysis of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Kingdom of Morocco; 2020-2021* (Oct. 11, 2023) ("*Post-Preliminary Memo*").

19.     In October 2023, interested parties, including OCP, the GOM, Mosaic, and The J.R. Simplot Company timely submitted case or rebuttal briefs addressing issues in Commerce's *Preliminary Results* and *Post-Preliminary Memo*.

20.     In October 2023, interested parties, including OCP, the GOM, and Mosaic participated in a public hearing before Commerce addressing issues raised in the parties case and rebuttal briefs.

21.     On November 1, 2023, Commerce issued its *Final Results*. *Final Results* 88 Fed. Reg. 76,726, and accompanying IDM. In the *Final Results*, Commerce calculated an overall countervailing duty rate of 2.12% for OCP.

22.     Notwithstanding that OCP cooperated fully throughout the administrative review and timely reported the OFPPT tax refund as a minor correction, Commerce announced for the first time in the *Final Results* that it was applying adverse facts available ("AFA") to OCP with respect to the OFPPT tax refund because "OCP failed to cooperate by not timely reporting this program to Commerce." IDM at 7. Commerce determined to use as a total AFA rate for this refund the 1.27% program-specific CVD rate calculated for the Tax Incentives for Export Operations program in the Investigation, even though, if Commerce had used the precise amount of the refund which was on the record to calculate any CVD rate, the resulting CVD rate would have been vastly smaller. IDM at 10; Verification Report at 2 (containing the precise amount of the refund).

23.     Commerce continued to find the Reductions in Tax Fines and Penalties *de facto* specific, but for the first time in the *Final Results* cited to evidence that the agency asserted supported a specificity determination. Also for the first time in the *Final Results*, Commerce purported to consider the economic diversification of the Moroccan economy as required by the

CVD law when making a *de facto* specificity determination. Ultimately, Commerce compared the reductions in tax fines and penalties that OCP received, to the average amount of reductions received by other companies in Morocco pursuant to this program and found that "OCP was a disproportionate user of this program . . . ." However, in making this finding, Commerce failed to consider OCP's significant size within the Moroccan economy. IDM at 48-49.

24. In the *Final Results*, Commerce calculated program-specific CVD rates for multiple purported programs as a result of information gathered through unlawfully required responses to the Other Assistance Question in both the Investigation and in AR 1. In particular, Commerce unlawfully investigated and calculated subsidy rates in AR 1 for the following programs as a result of information it originally gathered from OCP pursuant to the Other Assistance Question in the Investigation: 1) Reductions in Tax Fines and Penalties; 2) Revenue Exclusions from Minimum Tax Contributions; and 3) Customs Duty Exemptions for Capital Goods, Machinery, and Equipment. *Phosphate Fertilizers from the Kingdom of Morocco: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 9,482 (Dep't Commerce Feb. 16, 2021), and accompanying Issues & Decision Memorandum at 6. Commerce also unlawfully investigated and calculated subsidy rates in AR 1 for the OFPPT tax refund as a result of information it gathered from OCP pursuant to the Other Assistance Question in AR 1. *See* IDM at 15-18.

25. Additionally, Commerce unlawfully investigated in AR 1 Rail Transport Services for LTAR as a result of information it originally gathered from OCP pursuant to the Other Assistance Question in the Investigation, but, as it did in the Investigation, determined this alleged program is not countervailable. Commerce also investigated unlawfully but found not countervailable the following alleged programs as a result of information gathered from OCP

pursuant to the Other Assistance Question in AR 1:  1) Reductions in Local Tax Fines and Penalties; 2) Provision of Port Services and Infrastructure for LTAR; and 3) GOM Purchase of Electricity for MTAR.  IDM at 12.

26. On December 7, 2023, OCP timely filed a summons initiating this action at the U.S. Court of International Trade to challenge certain aspects of Commerce's *Final Results*.

## STATEMENT OF CLAIMS

27. Paragraphs 1 through 26 of this Complaint are incorporated by reference.

28. Commerce's *Final Results* are "unsupported by substantial evidence on the record, or otherwise not in accordance with law" as provided by 19 U.S.C. § 1516a(b)(1)(B)(i) for the following reasons:

## COUNT ONE

29. Paragraphs 1 through 28 are incorporated by reference.

30. Contrary to the agency's practice at verification, Commerce improperly rejected OCP's minor correction pertaining to the OFPPT tax refund notwithstanding that OCP timely disclosed this minor correction at the commencement of verification consistent with the agency's instructions, and the amount of the tax refund was minor given that any resulting CVD rate would be exceedingly small.  Accordingly, for these reasons among others, Commerce's decision to reject the minor correction pertaining to the OFPPT tax refund is unsupported by substantial evidence on the record or otherwise not in accordance with law.

## COUNT TWO

31. Paragraphs 1 through 30 are incorporated by reference.

32. Commerce improperly applied AFA in determining the countervailability of the small OFPPT tax refund, based on a determination that OCP failed to cooperate by providing

untimely information. IDM at 7. The application of AFA to OCP was not supported by the record evidence and contrary to law because OCP fully cooperated by timely bringing this small tax refund to Commerce's attention as soon as OCP became aware of it. Courts have been clear that cooperating in a CVD proceeding does not require perfection.

33. Accordingly, for these reasons among others, Commerce's decision to apply AFA to OCP in determining the countervailability of the OFPPT tax refund is unsupported by substantial evidence on the record, or otherwise not in accordance with law.

## COUNT THREE

34. Paragraphs 1 through 33 are incorporated by reference.

35. The record contained the exact amount of the OFPPT tax refund that OCP received. Accordingly, and notwithstanding the impropriety of the underlying countervailability finding, there was no gap in the record to fill with facts available with an adverse inference pursuant to 19 U.S.C. §§ 1677e(a) and (b).

36. Accordingly, for this reason among others, Commerce's decision to assign the 1.27% rate for the Tax Incentive for Export Operations subsidy as the AFA rate for OFPPT—a rate which is demonstrably (and vastly) greater than the CVD rate which results from the record evidence—is unsupported by substantial evidence on the record, or otherwise not in accordance with law.

## COUNT FOUR

37. Paragraphs 1 through 36 are incorporated by reference.

38. Commerce determined that Reductions in Tax Fines and Penalties was *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(I) and thus countervailable based on a flawed determination that OCP received a disproportionately large amount of the subsidy, a determination

which failed to take into account the economic diversification of the Moroccan economy including OCP's significant size within the Moroccan economy.

39. Accordingly, for these reasons among others, Commerce's determination that the provision of Reductions in Tax Fines and Penalties was specific and thus constituted a countervailable subsidy was unsupported by substantial evidence on the record, or otherwise not in accordance with law.

## COUNT FIVE

40. Paragraphs 1 through 39 are incorporated by reference.

41. As it did in the Investigation, Commerce unlawfully engaged in a "fishing expedition" in this review, seeking information about potentially countervailable subsidies pursuant to the Other Assistance Question without any evidentiary or legal basis to do so. Commerce has authority to investigate a countervailable subsidy not alleged by the petitioner only if a practice discovered during the proceeding "appears to be a countervailable subsidy" within the meaning of 19 U.S.C. § 1677d. As such, by seeking information regarding any other "assistance" provided by or "benefits" received from the GOM without a scintilla of evidence on the record indicating that such "assistance" in fact "appear{s} to be a countervailable subsidy," Commerce exceeded its statutory authority.

42. Accordingly for these reasons, among others, Commerce's Other Assistance Question was unsupported by substantial evidence on the record, or otherwise not in accordance with law.

43. Because Commerce should never have investigated potential subsidies based on information provided by OCP in response to the unlawful Other Assistance Question, its findings on these matters were *ultra vires*. Specifically, Commerce continued to investigate in this review,

based on information gathered from the unlawful Other Assistance Question in the Investigation, the following potential subsidies: 1) Reductions in Tax Fines and Penalties; 2) Revenue Exclusions from Minimum Tax Contributions; 3) Customs Duty Exemptions for Capital Goods, Machinery, and Equipment; and 4) Rail Transport Services for LTAR. Commerce also initiated an investigation into the following potential subsidies based on information gathered from the unlawful Other Assistance Question in this review: 5) Reductions in Local Tax Fines and Penalties; 6) Provision of Port Services for LTAR; 7) GOM's Purchases of electricity for MTAR; and 8) OFPPT. Because Commerce lacked a legal basis to seek out the underlying information related to these potential programs, it was unlawful for Commerce to include these potential subsidies in this review and to determine that some of them are countervailable.

44. Accordingly, for these reasons, among others, Commerce's decision to include these eight potential subsidies in the review, as well as its subsequent decision to countervail four of them, was unsupported by substantial evidence on the record, or otherwise not in accordance with law.

## COUNT SIX

45. Paragraphs 1 through 44 are incorporated by reference.

46. In light of the discussion above, and for other reasons evidenced in the record of the administrative proceeding, several aspects of Commerce's *Final Results*, which are the subject of this action, were unsupported by substantial evidence on the record, or otherwise not in accordance with law.

47. Although Commerce's *Final Results* also include certain other errors with respect to methodologies used in Commerce's Mining Rights calculations, as well as Commerce's continued examination of Direct Loans and Rail Transport Services for LTAR, this Court's

precedent holds that OCP does not have standing to assert these claims at this time. *See, e.g., The Mosaic Company v. United States*, Consol. Ct. No. 21-116, Slip Op. 23-134 at 65 (Sept. 14, 2023) (finding that OCP lacked standing to challenge Commerce's determination with respect to an alleged program the agency found not countervailable). As such, OCP expressly reserves its right to raise claims related to Mining Rights, Direct Loans, or Rail Transport Services for LTAR later in the action if it becomes appropriate. *See, e.g., Siemens Gamesa Renewable Energy v. United States*, Consol. Ct. No. 21-449, Slip Op. 23-149 at 15-16 (Oct. 11, 2023) (finding that a party may raise arguments in an action for the first time in response to a redetermination on remand made by Commerce).

\*   \*   \*

## PRAYER FOR RELIEF

For the reasons stated above, OCP respectfully requests that this Court:

1. Hold that Commerce's *Final Results* are unsupported by substantial evidence on the record, and otherwise not in accordance with law;

2. Remand the *Final Results* to Commerce for disposition consistent with any orders and opinions of this Court; and

3. Grant such other or further relief as this Court deems just and proper.

                                    Respectfully submitted,

                                    /s/ William R. Isasi
                                    William R. Isasi
                                    Leslie C. Bailey
                                    Cynthia C. Galvez
                                    Edward J. Thomas II

                                    **COVINGTON & BURLING LLP**
                                    One CityCenter
                                    850 10th Street, NW
                                    Washington, D.C. 20001

|  |  |
|---|---|
|  | Micaela McMurrough<br>Jordan B. Bakst<br>**COVINGTON & BURLING LLP**<br>The New York Times Building<br>620 Eighth Avenue<br>42nd Floor<br>New York, NY 10018 |
| Dated:  January 8, 2024 | *Counsel to OCP S.A.* |

13